IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALFA MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CLAUDE RONNIE NICHOLSON, MYRA JANE NICHOLSON, and CLINTON P. PICKETT, | ) ) ) ) |
| Defendants. | ) ) |
| ********************************** | ) )    CASE NO.: 1:13-cv-322-MEF |
| CLAUDE RONNIE NICHOLSON, and MYRA JANE NICHOLSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ALFA MUTUAL INSURANCE COMPANY, CLINTON P. PICKETT, BENDIX COMMERCIAL VEHICLE SYSTEMS, LLC, and OSHKOSH CORPORATION, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Remand and Opposition to Counter-Defendants' Motions to Sever filed by Plaintiffs Claude R. Nicholson and Myra J. Nicholson (collectively, "Plaintiffs" or the "Nicholsons") on June 19, 2013. (Doc. #20.) Having carefully considered the parties' arguments, the applicable case law, and the record as a

whole, the Court finds that the motion is due to be DENIED.

## I. FACTS AND PROCEDURAL HISTORY

This action arises out of a motor vehicle accident that occurred on April 29, 2011, involving the Nicholsons and an unoccupied HEMTT M1120A4 LHS motorized vehicle ("HEMTT") that was designed, manufactured, and supplied by Oshkosh Corporation ("Oshkosh") for use by the United States Army.[1] The Nicholsons allege that the accident was caused by a defective air brake system and a defective parking brake system that were designed and manufactured by Bendix Commercial Vehicle Systems, Inc. ("Bendix") and used by Oshkosh in producing the subject HEMTT. The Nicholsons further claim that these defects caused the HEMTT to disengage from a parked position and roll downhill until it collied with the Nicholsons' vehicle on Highway 167 in Enterprise, Alabama.

This action involves essentially two separate controversies. The first controversy is a declaratory judgment action filed by the Nicholsons' insurance carrier, ALFA Mutual Insurance Company ("ALFA"), in the Circuit Court of Coffee County, Alabama against the Nicholsons and Clinton P. Pickett ("Pickett"), the individual who had been operating the HEMTT shortly before it collided with the Nicholsons' vehicle. ALFA seeks a declaration of the parties' rights concerning uninsured motorist coverage provided under a policy of insurance ALFA had issued to the Nicholsons at the time of the collision. (Doc. #1-4.) The second controversy was initiated by the Nicholsons when they filed a counterclaim against

---

[1] The particular HEMTT at issue was assigned to and maintained by the Alabama National Guard. (Doc. #1.)

2

ALFA for uninsured motorist benefits and a crossclaim against Pickett for negligence and wantonness in the declaratory judgment action.  The Nicholsons also joined Oshkosh and Bendix as defendants to this action,[2] asserting claims against them for negligence, wantonness, and liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") based on the purportedly defective design and manufacturing of the subject HEMTT.  (Doc. #1-6.)

Oshkosh removed the entire action to this Court on May 14, 2013, pursuant to 28 U.S.C. §§ 1441 (general removal) and 1442 (federal officer removal).  (Doc. #1.)  In its Notice of Removal, Oshkosh argues that the entire action is removable on two grounds.  First, Oshkosh argues that removal is proper because the Nicholsons' claims against Oshkosh, Bendix, and Pickett are separate and independent third-party claims that are removable by Oshkosh as a third-party defendant under *Carl Heck Engineers, Inc. v. Lafourche Parish Policy Jury*, 622 F.2d 133 (5th Cir. 1980).  (Doc. #1.)  Second, Oshkosh argues that an alternative basis for removal exists under § 1442, which is known as the "federal officer" removal statute.  (Doc. #1.)  Also, in its Notice of Removal, Oshkosh requested that the Court sever the declaratory judgment action and remand it back to the Coffee County Circuit Court.  (Doc. #1.)  On May 29, 2013, Bendix joined in Oshkosh's motion to sever and remand the insurance coverage dispute, thus implicitly consenting to

---

[2] It bears noting that the Nicholsons joined several fictitious parties to their lawsuit as well.  (Doc. #1-6.)  However, because there is no fictitious party pleading in federal court, the Court will disregard these allegations.  *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court.").

removal.  (Doc. #11.)  Pickett did the same on June 19, 2013.  (Doc. #19.)

On June 5, 2013, ALFA also moved the Court to sever the declaratory judgment action and remand it back to the Coffee County Circuit Court.  (Doc. #13.)  On June 19, 2013, the Nicholsons moved to remand the entire action back to the Coffee County Circuit Court and opposed Oshkosh, Bendix, and Pickett's motions to sever on the basis that this Court lacked subject matter jurisdiction over any of the parties' claims.  (Doc. #20.)  The Court held a hearing on these pending motions on June 20, 2013.  Recognizing that it could not rule on the motions to sever until the issue of subject matter jurisdiction had been resolved, the Court denied ALFA and Oshkosh's motions to sever and remand the declaratory judgment action, which left only the Nicholsons' motion to remand pending before the Court.  (Doc. #23.)  The Court ordered that the parties brief the Nicholsons' motion to remand.  (Doc. #23.)  Pickett, Oshkosh, and Bendix filed responses opposing the Nicholsons' motion (Docs. #24, 26, 27), while ALFA joined in the motion (Doc. #25).  Accordingly, the issue of subject matter jurisdiction and removal is now fully briefed and ripe for the Court's review.

## II.  STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).  As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States.  *Id.* at 377.  A removing defendant "bears the burden of proving proper federal jurisdiction."  *Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 972 (11th Cir. 2002).  Thus,

a removing defendant must "produc[e] facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence." *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001). Generally, removal statutes should be strictly construed against removal, and all uncertainties should be resolved in favor of remand. *See, e.g.*, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

The federal officer removal provision, however, is neither narrow nor limited, but instead "is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969); *Morgan v. Bill Vann Co., Inc.*, No. 11-cv-535, 2011 WL 6056083, at *3 (S.D. Ala. Dec. 6, 2011) ("[Section] 1442(a) must be liberally construed in favor of removal."). Indeed, the Eleventh Circuit has explained that the right of removal under this statute is "'absolute whenever a suit in a state court is for any 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court.'" *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting *Willingham*, 395 U.S. at 406). "If the statutory prerequisites are satisfied, section 1442(a)(1) provides an independent federal jurisdictional basis." *Id.*

### III. DISCUSSION

In its Notice of Removal, Oshkosh asserts two bases for removal. First, Oshkosh alleges that removal is proper under § 1441 pursuant to *Carl Heck Engineers, Inc. v.*

*Lafourche Parish Policy Jury*, 622 F.2d 133 (5th Cir. 1980),[3] which permits removal of an action by a third-party defendant.  Alternatively, Oshkosh argues that the case is removable under § 1442(a), known as the federal officer removal statute.  With respect to Oshkosh's first argument—that Oshkosh is entitled to remove this action as a third-party defendant under *Carl Heck*—the parties argue over the nomenclature attributed to Oshkosh, namely, whether Oshkosh is a "counterclaim" or "third-party" defendant.  This distinction is significant, as Oshkosh's removal would be improper under § 1441 and *Carl Heck* if Oshkosh is a counterclaim defendant but proper if Oshkosh is a third-party defendant.[4]

---

[3] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981).

[4] *Compare Deutsche Bank Nat. Trust Co. v. Baxter*, No. 2:13-cv-1272-VEH, 2013 WL 5229994, at *5–7 (N.D. Ala. Sept. 18, 2013) (recognizing that, under *Carl Heck's* binding precedent, removal by a third-party defendant is permissible in this Circuit, but declining to follow the Fifth Circuit's non-binding decision in *State of Tex. by and through Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 916 (5th Cir. 1998), which extended *Carl Heck's* holding to include counter defendants, finding "it unlikely that the Eleventh Circuit would extend *Carl Heck* to include counterclaim defendants" and that this was "especially true where, as here, the underlying claims have not been severed"), *and Citibank (S. Dakota), N.A. v. Duncan*, 2:09-cv-868-WKW, 2010 WL 379869, at *2 (M.D. Ala. Jan. 25, 2010) ("Although *Carl Heck* is binding authority as to removals by third-party defendants, *Walker* is not . . . . The Eleventh Circuit has yet to decide whether § 1441(c) encompasses removals by counter-defendants, and given the divisiveness among other courts as to the underlying conclusion reached in *Carl Heck*, the court is persuaded that the better course is to remand, rather than to guess what this circuit might hold if presented with the unsettled issue of whether *Carl Heck* should be extended to removals by counter-defendants."), *with Mace Sec. Intern., Inc. v. Odierna*, No. 08-cv-60778, 2008 WL 3851839, at *4 (S.D. Fla. Aug. 14, 2008) (finding the Fifth Circuit's decision in *Walker* to be persuasive and extending *Carl Heck* to include counterclaim defendant removals), *and North Star Capital Acquisitions, LLC v. Krig*, 2007 WL 3522425, at *1 n.3 (M.D. Fla. Nov. 15, 2007) ("Unlike *Carl Heck*, *Walker* is not binding in the Eleventh Circuit.  However, the *Walker* holding to allow removal by counterclaim defendants is simply a natural extension of the *Carl Heck* rule by which this Court is bound.").  In short, the law in this Circuit is not clear on whether removal is proper by counterclaim defendants, and this Opinion in no way resolves or rules on that general issue or the specific issues of whether Oshkosh,

However, while the Court recognizes this significance, it is unnecessary for the Court to belabor itself with resolving this dispute,[5] as Oshkosh has sufficiently demonstrated an alternative basis for removal of this action under the federal officer removal statute.

Section 1442, or the federal officer removal statute, provides:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

28 U.S.C. § 1442(a)(1). For Oshkosh to remove this case under this section, it must demonstrate that (1) it acted under the direction of a federal officer, (2) there was a causal connection between its action and the official authority, (3) it has a colorable federal defense to the Nicholsons' claims, and (4) it is a "person" within the meaning of the statute. *E.g., King v. Provident Bank*, 428 F. Supp. 2d 1226, 1231 (M.D. Ala. 2006); *Swanstrom v. Teledyne Cont'l Motors, Inc.*, 531 F. Supp. 2d 1325, 1331 (S.D. Ala. 2008) (citing *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 967 n.2 (8th Cir. 2007), and *Jefferson Cnty. v.*

---

Bendix, and Pickett are counterclaim defendants or third-party defendants in this case and, if they are indeed counterclaim defendants, whether Oshkosh could remove this action under § 1441.

[5] The statutory language of § 1442 with respect to who can remove an action to federal court is much broader than § 1441. *Compare* § 1441(a) ("[A]ny civil action . . . may be removed by the *defendant* or the *defendants* . . . .") (emphasis added), *with* § 1442(a) ("A civil action . . . may be removed *by them*" (referring to those identified in subsection (1) through (4)) (emphasis added).

*Acker*, 527 U.S. 423, 430–31 (1999)).

The Nicholsons concede that Oshkosh has met the third and fourth elements for removal under § 1442(a), namely, that Oshkosh has a colorable federal defense to the Nicholsons' claims through its government contractor defense (*see* Doc. #6, Second Defense), and that Oshkosh can demonstrate that it is a "person" within the meaning of the statute. *See Morgan*, 2011 WL 6056083 at *5-7 (recognizing the government contractor defense as a colorable federal defense for purposes of removal under § 1442 and stating "an officer need not win his case before he can have it removed . . That defense need only be plausible; its ultimate validity is not to be determined at the time of removal.") (internal quotations and citations omitted); *Swanstrom*, 531 F. Supp. 2d at 1331 (holding that a corporation is a "person" under § 1442); *Jones v. Three Rivers Elec. Co-op.*, 166 F.R.D. 413, 414 (E.D. Mo. 1996) (holding that a corporation is a "person" under § 1442 and also recognizing a government contractor defense as a colorable federal defense for purposes of removal under § 1442). What the Nicholsons do challenge is Oshkosh's ability to demonstrate the first two elements for removal under § 1442(a)(1)—that Oshkosh acted under the direction of a federal officer and that there was a causal connection between its actions and the official authority. (Doc. #20, p. 9.) The Nicholsons base this argument on their claim that the allegedly defective air brake and parking brake system used in the HEMTT was not designed specifically for the United States Army but was, instead, a generic, off-the-shelf system that Bendix used in many different types of commercial vehicles. (Doc. #20.)

The Court is not persuaded by the Nicholsons' arguments. The first element for removal under § 1442—that Oshkosh acted under the direction of a federal officer—"depends on the detail and specificity of the federal direction of the defendant's activities and whether the government exercises control over the defendant." *King*, 428 F. Supp. 2d at 1231 (internal quotations omitted). In its Notice of Removal, Oshkosh alleges:

> The subject military vehicle was one of 102 HEMTT A4 vehicles procured by the U.S. Army under the Government Contract for the National Guard. In designing, manufacturing and supplying the U.S. Army with the subject HEMTT, Oshkosh acted under the detailed direction and control of the U.S. Army and its officers. An inspector/officer of the U.S. Army who was present at the Oshkosh manufacturing plant personally oversaw the manufacturing process, enforcing compliance with the Army's design specifications. Furthermore, the vehicles ultimately supplied to the U.S. Army were subject to extensive testing and inspection by the U.S. Army as a prerequisite to approval, acceptance and use.

(Doc. #1, p. 8–9.) These allegations alone establish that the United States Army exercised sufficient control and direction over Oshkosh such that the "acted under" element for removal under § 1442 has been met.

However, Oshkosh has also submitted evidence through the Declaration of Craig Glaunert ("Glaunert"), Senior Director, Defense Contracts for Oshkosh, wherein Glaunert testifies as to the specific direction and control that the United States Army exercised over Oshkosh in connection with the production of the subject HEMTT.[6]  (Doc. #32-1.)

---

[6] Federal courts have "routinely allowed defendants removing on the basis of federal officer jurisdiction either to make an evidentiary showing post-removal or to rely on factual allegations in the notice of removal untethered to specific evidentiary proof." *Morgan*, 2011 WL 6056083 at * 4 (citing collection of cases). Thus, the Court can and will consider Glaunert's declaration when resolving the Nicholsons' motion to remand. Indeed, this declaration will simply be treated as an amendment to the Notice of Removal to include supplemental information and evidence. *See id.*

Specifically, Glaunert testifies that the HEMTT vehicles were manufactured pursuant to a procurement contract with the United States Army. (Doc. #32-1, ¶ 6.) These vehicles, including their parts, are manufactured pursuant to precise, contractual United States Army specifications and are not available for purchase by the general public. (Doc. #32-1, ¶ 6.) All design specifications, parts, and materials for the manufacture of the HEMTT, which would include its parking brake and air brake systems, must be pre-approved by the United States Army. (Doc. #32-1, ¶ 7.) In fact, Oshkosh cannot depart from the United States Army's mandated specifications, directives, and procedures for manufacturing, nor may it change or alter the specified and mandated part and materials without approval from the Army. Finally, United States Army officers and agents oversee the production of the HEMTT vehicles and test them pursuant to the Army's specifications before they are approved and accepted for use.

Considering the above, and in light of the liberal standard favoring federal officer removal, the Court is satisfied that Oshkosh has met the first element for removal under § 1442. The fact that Bendix may supply Oshkosh with an air brake system for use in the HEMTT vehicles that is similar to air brake systems that it supplies to other manufacturers for use in non-military vehicles does not change the fact that the subject HEMTT, including its various parts, was manufactured by Oshkosh under a production contract with the United States Army and in accordance with the contractual directives and specifications provided to Oshkosh by the United States Army. The Court is also satisfied that because Oshkosh "acted under" the direct control of the United States Army and its agents in the production

of the HEMTT vehicles, the second element for removal under § 1442—a causal nexus—has been met. *See Blackman v. Asbestos Defendants (BHC)*, No. 97-cv-3066, 1997 WL 703773, at *3 (N.D. Cal. Nov. 3, 1997). Accordingly, Oshkosh's removal of this entire action under § 1442 was proper,[7] and the Nicholsons' motion to remand is due to be DENIED.

As a final matter, the Court notes that several of the parties have briefed, in some detail, the issue of severance and remand of the declaratory judgment action in this case. Following the June 20, 2013 hearing, the Court denied all pending motions to sever, noting that such motions could not be resolved until the Court decided the issue of subject matter jurisdiction. The Court then ordered the parties to respond only to the Nicholsons' motion to remand. However, upon further reflection, the Court has realized that the Nicholsons' motion to remand also contained their opposition to several motions to sever, which were pending at the time, and that this likely created some confusion, prompting several parties to still brief the issue of severance when responding to the Nicholsons' motion to remand, although no motions to sever were actually pending before the Court.

Given this confusion, the Court will not resolve the issue of severance at this time. Instead, the Court will give the parties an opportunity to rebrief this issue in light of the holding in this Opinion that Oshkosh was entitled to remove the entire action to this Court

---

[7] "'It is well settled that, if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claim.'" *Kite v. Bill Vann Co., Inc.*, No. 11-cv-444-WS, 2011 WL 4499345, at *6 (S.D. Ala. Sept. 29, 2011). Thus, the entire action is removable by Oshkosh.

under § 1442.

## IV.  CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

1. The Nicholsons' Motion to Remand and Opposition to Counter-Defendants' Motions to Sever (Doc. #20) is DENIED.

2. To the extent any party to this action still seeks to sever and remand the declaratory judgment portion of this case to the Coffee County Circuit Court, that party shall file a separate motion to sever no later than March 21, 2014.  Any motion to sever filed pursuant to this Order shall not incorporate by reference or otherwise adopt arguments or authorities contained in previously filed motions to sever, but shall reallege and set forth in full the grounds for the motion and the arguments in support thereof.  Also, any motion to sever filed pursuant to this Order shall not exceed 10 pages in length, excluding the certificate of service.  The Court will issue a shortened briefing schedule for responses and replies to any motion to sever filed pursuant to this Order.

DONE this the 7th day of March, 2014.

                                                     /s/ Mark E. Fuller
                                         UNITED STATES DISTRICT JUDGE